490                  June 22, 2023                  No. 310

Argued and submitted April 19, reversed and remanded June 22, 2023

Alison K. LAVELLE-HAYDEN,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and Legacy Good Samaritan
Hospital and Medical Center,
*Respondents.*

Employment Appeals Board
2021EAB1066; A177971

533 P3d 75

Claimant seeks judicial review of an order of the Employment Appeals Board (EAB) upholding employer Legacy Good Samaritan Medical Center's denial of her claim for unemployment compensation after EAB determined that claimant was disqualified from receiving unemployment benefits because she was discharged from her position as a respiratory therapist for misconduct for having violated employer's policy in refusing to receive a COVID-19 vaccination. In claimant's four assignments of error, claimant contends that EAB's order violated claimant's rights, either under the First Amendment or because claimant's action in refusing to be vaccinated was based on a sincerely held religious belief that employer had an obligation to accommodate under Title VII of the Civil Rights Act of 1964, 42 USC sections 2000e to 2000e-17. *Held*: The Court of Appeals rejected claimant's contention that EAB's determination that she was discharged for misconduct violated Title VII of the Civil Rights Act of 1964. But the court accepted the Employment Department's concession that EAB's order was not supported by substantial reason, in light of EAB's failure to make a determination whether claimant's misconduct was the result of a sincerely held religious belief, which would preclude a disqualification from unemployment compensation based on misconduct. The court remanded the case to EAB for reconsideration.

Reversed and remanded.

Ray D. Hacke argued the cause for petitioner. Also on the briefs was Pacific Justice Institute.

Michael A. Casper, Assistant Attorney General, argued the cause for respondent Employment Department. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Sophie Shaddy-Farnsworth argued the cause for respondent Legacy Good Samaritan Hospital and Medical Center.

Also on the brief were Brenda K. Baumgart, Crystal S. Chase, and Stoel Rives LLP.

Before Tookey, Presiding Judge, and Egan, Judge, and Kamins, Judge.

TOOKEY, P. J.

Reversed and remanded.

**TOOKEY, P. J.**

Claimant seeks judicial review of an order of the Employment Appeals Board (EAB) upholding employer Legacy Good Samaritan Medical Center's denial of her claim for unemployment compensation after EAB determined that claimant was disqualified under ORS 657.176(2) from receiving unemployment benefits because she was discharged from her position as a respiratory therapist for misconduct for having violated employer's policy in refusing to receive a COVID-19 vaccination. Claimant raises four assignments of error. Each of them is premised in part on claimant's view that EAB's order violated claimant's rights, either under the First Amendment or because claimant's action in refusing to be vaccinated was based on a sincerely held religious belief that employer had an obligation to accommodate under Title VII of the Civil Rights Act of 1964, 42 USC sections 2000e to 2000e-17. In reviewing EAB's findings for substantial evidence in the record and its legal conclusions for errors of law, ORS 183.482(8); *Marella v. Employment Dept.*, 223 Or App 121, 123, 194 P3d 849 (2008), we conclude that EAB's order must be reversed and remanded for reconsideration.

The facts are undisputed. Claimant worked for employer as a respiratory therapist. Claimant worked with many COVID-19 patients until she was discharged from her employment in October 2021. She complied with all of employer's protocols for protective gear and personal hygiene; however, she declined to be vaccinated, as required by employer's policy and an administrative rule adopted by the Oregon Health Authority (OHA), OAR 333-019-1010(1) (Sept 1, 2021).[1]

---

[1] OAR 333-019-1010(1) (Sept 1, 2021) provides:

"It is vital to this state that healthcare providers and healthcare staff be vaccinated against COVID-19. COVID-19 undergoes frequent mutations as it replicates, which over time has resulted in variants that are more transmissible or cause more severe disease. As of the time this rule was adopted, Delta was the variant making up more than 98 percent of sequenced specimens in Oregon. The Delta variant is approximately two to three times more infectious than early wild-type COVID-19 variants. There is emerging evidence that people infected with the Delta variant have similar viral loads regardless of vaccination status suggesting that even vaccine breakthrough cases may transmit this variant effectively. Being vaccinated, is therefore critical to prevent spread of Delta. Healthcare providers and healthcare staff have contact with multiple patients over the course of a typical day and week,

OAR 333-019-1010 (2021) included a provision allowing employers to grant exemptions to those workers whose sincere religious convictions prevented them from receiving a COVID-19 vaccine. OAR 333-019-1010(3), (4) (2021).[2] Claimant describes herself as a religious person.

---

including providers that provide care for people in their homes. Individuals cared for in these settings are more likely than the general public to have conditions that put them at risk for complications due to COVID-19. COVID-19 variants are running through the state's unvaccinated population and causing an increase in breakthrough cases for those who are fully vaccinated. This rule is necessary to help control COVID-19, protect patients, and to protect the state's healthcare workforce."

[2] OAR 333-019-1010(3) (2021) provided:

"After October 18, 2021:

"(a) A health care provider or healthcare staff person may not work, learn, study, assist, observe, or volunteer in a healthcare setting unless they are fully vaccinated or have provided documentation of a medical or religious exception.

"(b) An employer of healthcare providers or healthcare staff, a contractor, or a responsible party may not employ, contract with, or accept the volunteer services of healthcare providers or healthcare staff persons who are working, learning, studying, assisting, observing or volunteering at a healthcare setting unless the healthcare providers or healthcare staff persons are fully vaccinated against COVID-19 or have a documented medical or religious exception."

OAR 333-019-1010(4) (2021) provided:

"On or before October 18, 2021, healthcare providers and healthcare staff must provide their employer, contractor or responsible party with either:

"(a) Proof of vaccination showing they are fully vaccinated; or

"(b) Documentation of a medical or religious exception.

"(A) A medical exception must be corroborated by a document signed by a medical provider, who is not the individual seeking the exception, on a form prescribed by the Oregon Health Authority (OHA) or a similar form that contains all of the information required in the OHA form, certifying that the individual has a physical or mental impairment that limits the individual's ability to receive a COVID-19 vaccination based on a specified medical diagnosis, and that specifies whether the impairment is temporary in nature or permanent.

"(B) A religious exception must be corroborated by a document, on a form prescribed by the Oregon Health Authority (OHA) or a similar form that contains all of the information required in the OHA form, signed by the individual stating that the individual is requesting an exception from the COVID-19 vaccination requirement on the basis of a sincerely held religious belief and including a statement describing the way in which the vaccination requirement conflicts with the religious observance, practice, or belief of the individual."

OAR 333-019-1010(5)(b) (2021) provided that nothing in the rule was intended to prevent healthcare facilities from "[h]aving more restrictive or additional requirements."

When she obtained information that led her to believe that the available vaccines had been developed with the use of aborted fetuses, she concluded that her sincerely held religious beliefs would not allow her to be vaccinated, and she sought a religious exemption.

Employer required claimant to complete a form requesting an exemption from the vaccination requirement. Employer instructed employees requesting a religious exception to attach a signed letter from a religious authority in the employee's faith community "explaining how administration of the COVID-19 vaccine conflicts with bona-fide religious tenets or practices of your faith."[3] If the employee did not have a religious authority, employer authorized the employee to submit their own letter containing the same information. Employer's policy required the request for exemption to be specific about the "bona-fide" religious belief and advised employees that a "general philosophical or moral objection to the vaccine will not be sufficient for [employer] to evaluate the request or grant an exemption."

Claimant's church declined to provide documentation in support of claimant's request for exemption, so claimant submitted a letter describing her religious beliefs that required her to decline to be vaccinated:

> "According to my Christian faith, I believe my body is a temple of the Holy Spirit and it is a personal responsibility for me to protect my body's physical integrity against unethical and harmful ingredients and injections.

> "*** I believe that life is precious and a gift and I personally do not believe in abortion. Stem cells from aborted fetuses are used in testing of the vaccines or are in the vaccines themselves. I cannot in good conscience take these vaccines knowing that the creation or contents of the vaccines go against my personal and religious beliefs."

---

[3] We note that, although employer's policy referred to a "bona-fide religious tenet," which appears to be the judicially established standard under Title VII, *Heller v. EBB Auto Co.*, 8 F3d 1433, 1438 (9th Cir 1993), OAR 333-019-1010(4) (2021) refers to an exemption based on "a sincerely held religious belief." The parties do not address that distinction or propose that it makes any substantive difference to our analysis and they use the terms interchangeably. In this opinion, we use both terms, depending on context.

Employer had established a committee to review religious exemption requests based on two criteria: (1) consistency (*i.e.*, whether the employee had recently received other vaccines), and (2) specificity (*i.e.*, whether the employee clearly stated their religious belief, and that the religious belief is specifically against receiving the COVID-19 vaccine).

Employer determined that claimant did not meet its criteria for a religious exemption and rejected claimant's request for an exemption. Employer offered claimant the choice of receiving the vaccination, being placed on administrative leave and then terminated from employment, or resigning. Claimant chose to be terminated from her employment.

When claimant filed a claim for unemployment benefit, employer rejected the claim based on misconduct. The Employment Department issued an administrative decision upholding employer's denial, explaining that, in failing to comply with employer's reasonable vaccination policy, claimant had violated standards of behavior that an employer had a right to expect and had thereby engaged in misconduct. At a hearing, claimant described her reasons for declining to be vaccinated:

> "I am a Christian who believes in God and live by the words in the Bible. So I believe the Bible says we are not permitted to treat the body in a way we believe will harm it. So according to my faith and beliefs, we are created in God's image. I believe my body is a temple and it's my personal responsibility to protect my integrity of my body against toxins and harmful things."

Claimant testified that she had taken vaccines when she was a child, but had not been vaccinated more recently and that, as she got older, she felt her "religious and personal beliefs have grown, and I'm more aware of what I put into my body." Claimant explained that she had declined to get flu shots each year for religious reasons and that employer had allowed that. Claimant also described her view that, compared to other vaccines that she had taken in the past, she felt that the COVID-19 vaccine had been rushed, "was more in the news a lot[,]" and that "it was being forced on

people." Claimant added that "the use of fetal cells in the development, research, and production, it's just some of those things that I don't condone and don't feel deep down that are right."

An administrative law judge (ALJ) found that claimant's explanation expressed more of a general philosophical or moral objection than a specific explanation of how her religious beliefs would be violated. The ALJ noted that the fact that claimant's church had declined to provide a letter supported an inference "that the church did not consider taking the vaccine to be a violation of any religious practice or tenet of faith." The ALJ concluded that "[o]n this record, claimant has not shown that she was entitled to an exemption from the vaccine requirement on the basis of a bona-fide religious belief" and upheld employer's determination that claimant had been discharged for misconduct.

EAB affirmed the ALJ's order and upheld the department's denial. EAB acknowledged that claimant had sought a religious exemption but reasoned that employer had adopted a reasonable and objective neutral policy and procedure for determining whether to grant a religious exemption and, after it denied claimant's request, employer reasonably expected that claimant would comply with the vaccination policy. Because claimant had willfully violated employer's reasonable policy, EAB reasoned, she was discharged for misconduct and therefore was disqualified from receiving benefits. EAB did not address claimant's contention that the ALJ had erred in determining that claimant did not hold a bona-fide religious belief.

On judicial review, claimant contends that EAB erred in upholding the department's denial of benefits. Each of claimant's assignments depend on her contention that her refusal to get vaccinated could not be a basis for disqualification, because her refusal was based on a sincerely held religious belief that prevented her from getting vaccinated.

In her first assignment of error, claimant contends that EAB erred in determining that she was discharged for misconduct. Claimant contends that she was not discharged for misconduct; rather, it was employer who engaged in

misconduct, by violating Title VII of the Civil Rights Act of 1964, in failing to accommodate claimant's sincerely held religious belief. In her second assignment, claimant contends that, in upholding employer's denial of benefits, EAB unconstitutionally lent its support to "one side" of a religious controversy rather than maintaining neutrality, as constitutionally required. In her third assignment, claimant contends that EAB violated her constitutional rights by conditioning her exemption based on a sincerely held religious belief on a letter from her church. In her fourth assignment, claimant contends that EAB violated her constitutional rights in finding that she was fired for misconduct based on her refusal to violate a sincerely held religious conviction.

*First assignment of error*

As noted, in her first assignment of error, claimant contends that EAB erred in determining that she was discharged for misconduct, because employer's determination to discharge her ran afoul of Title VII of the Civil Rights Act of 1964. We reject claimant's contention. ORS 657.176(2) requires disqualification from unemployment benefits if the employer discharges a claimant for "misconduct connected with work." "Misconduct connected with work" includes "a willful or wantonly negligent violation of the standards of behavior which an employer has the right to expect of an employee." OAR 471-030-0038(3)(a). It is undisputed that claimant was discharged because she refused to comply with employer's vaccination requirement, which EAB determined was a reasonable policy. EAB determined that that was misconduct.

Title VII provides:

"It shall be an unlawful employment practice for an employer—

"(1)  to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

Claimant does not contend that this is a claim under Title VII; she contends only that the analysis applicable to a

claim under Title VII should apply in determining whether she was discharged for misconduct. As the Supreme Court held in *Heller v. Ebb Auto Co.*, 308 Or 1, 7, 774 P2d 1089 (1989), an administrative proceeding relating to the denial of unemployment compensation benefits for misconduct is not an employment discrimination claim under Title VII. Rather, the analysis that bears on the the constitutional implication of a denial of unemployment benefits based on misconduct is whether the agency's order runs afoul of the First Amendment. *See, e.g.*, *Sherbert v. Verner*, 374 US 398, 403, 83 S Ct 1790, 1793, 10 L Ed 2d 965 (1963) (holding that the denial of unemployment benefits can violate the Free Exercise Clause in cases where the claimants refused or resigned from jobs that conflicted with their religious beliefs). Because claimant's contentions in her first assignment of error challenging EAB's determination that she was discharged for misconduct are based entirely on Title VII, we reject them.

*Remaining assignments of error*

Claimant's remaining assignments challenge the denial of unemployment compensation on constitutional grounds, contending that her refusal to be vaccinated could not be a basis for disqualification, because her refusal was based on a sincerely held religious belief. As the department acknowledges, under the Free Exercise Clause of the First Amendment, a state generally cannot deny unemployment benefits to a worker if the misconduct forming the basis for the discharge from employment was the result of the worker adhering to a sincerely held religious belief. *Sherbert*, 374 US at 403. The department correctly explains that, because OAR 333-019-1010(4) (2021) specifically allows for a religious exemption from vaccination, the state cannot condition the receipt of unemployment benefits on a worker's willingness to be vaccinated if receiving the vaccine is, in fact, forbidden by the worker's sincerely held religious beliefs.[4] Thus,

---

[4] We note that EAB relied on *Employment Division v. Smith*, 494 US 872, 881, 110 S Ct 1595, 108 L Ed 2d 876 (1990), as the "operative authority," in support of its conclusion that the state can deny unemployment benefits where the claimant was discharged for violating a "valid and neutral law of general applicability," even if the claimant violated the law as a matter of sincere religious conviction. However, as the department acknowledges, *Smith* is inapposite, because, in view

whether claimant was properly disqualified from unemployment benefits in this case turns on the factual question whether claimant's refusal to comply with employer's vaccine policy was the result of a sincerely held religious belief. The board did not address that issue. Nor did it adopt the ALJ's finding that claimant did not have a "bona-fide" religious belief.

The department concedes that EAB's failure to make a factual determination regarding the sincerity of claimant's religious belief means that EAB's order is not supported by substantial reason, and that the order must be remanded for EAB to determine whether claimant has established that she was unable to comply with employer's vaccination policy because of a sincerely held religious belief. We agree and accept the concession, and that concession obviates the need to address the remaining assignments.

The department asserts that substantial evidence in the record would support the ALJ's finding that claimant did not have a sincerely held religious belief that prevented her from being vaccinated. That is an issue that the board can consider in the first instance on remand.

Reversed and remanded.

---

of the religious exemption provided by OAR 333-019-1010(4) (2021), this case does not involve the violation of a "neutral law of general applicability." Thus, the department concedes, it is not the rule from *Smith* but rather the test from *Sherbert* that governs. Under that test, if a person was, in fact, unable to get the COVID vaccine because of a sincerely held religious belief, and was terminated as a result, Oregon could not deny unemployment benefits to that person absent a "compelling government interest" in doing so.