804 December 18, 2024 No. 905

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Alison K. LAVELLE-HAYDEN,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and Legacy Good Samaritan Hospital and Medical Center,
*Respondents.*

Employment Appeals Board
2021EAB1066R;
A182835

Argued and submitted November 18, 2024.

Ray D. Hacke argued the cause for petitioner. Also on the briefs was Pacific Justice Institute.

Emily N. Snook, Assistant Attorney General, argued the cause for respondent Employment Department. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

No appearance for respondent Legacy Good Samaritan Hospital and Medical Center.

Before Hellman, Presiding Judge, Lagesen, Chief Judge, and Mooney, Senior Judge.

LAGESEN, C. J.

Reversed and remanded.

**LAGESEN, C. J.**

This case is before us for the second time. Claimant's employment as a respiratory therapist at a hospital was terminated after the hospital denied her request for a religious exemption from its COVID-19 vaccine requirement, and after claimant declined to be vaccinated. The Employment Department denied claimant's request for unemployment benefits, and the Employment Appeals Board (EAB) affirmed that decision. We remanded because, in denying benefits, the EAB did not apply the correct legal standard in evaluating claimant's assertion that the denial of unemployment benefits would violate her rights under the Free Exercise Clause of the First Amendment to the United States Constitution, as incorporated against the states by the Fourteenth Amendment to the United States Constitution, in view of claimant's religious objection to the vaccine. *Lavelle-Hayden v. Employment Dept.*, 326 Or App 490, 498-99, 533 P3d 75 (2023). On remand, the EAB again upheld the denial of benefits, finding that claimant's beliefs were more likely than not secular or personal in nature, instead of religious. On review for substantial evidence and legal error, ORS 183.482(8), we reverse and remand with directions to award benefits to claimant.

It is well-established under United States Supreme Court case law construing the First Amendment's Free Exercise Clause that a state cannot deny unemployment benefits to a person who loses their job for conduct based on sincere "beliefs rooted in religion" unless the state establishes that the denial of benefits is "the least restrictive means of achieving some compelling state interest." *Thompson v. Review Bd. of Indiana Employment Sec. Div.*, 450 US 707, 713, 718, 101 S Ct 1425, 67 L Ed 2d 624 (1981). In assessing whether a person's conduct is based on sincere "beliefs rooted in religion," the "function" of a court (or other tribunal) is "narrow." *Id.* at 716. The court's role is limited to determining whether the person has an "honest conviction" based on religious principles. *Id.* "[T]he resolution of that question is not to turn upon a judicial perception of the particular belief or practice in question; religious beliefs need not be acceptable, logical, consistent, or comprehensible to

others to merit First Amendment protection." *Id.* at 714. As a general matter, a tribunal must take care not to question the plausibility of a person's asserted religious beliefs, and must not pass judgment on those beliefs: "Repeatedly and in many different contexts, we have warned that courts must not presume to determine the place of a particular belief in a religion or the plausibility of a religious claim." *Employment Division v. Smith*, 494 US 872, 887, 110 S Ct 1595, 108 L Ed 2d 876 (1990).

At issue here is whether the EAB's determination that claimant's beliefs were solely secular or personal, and not religious, is supported by substantial evidence. "Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8)(c). In this case, when the record is viewed as a whole through the free-exercise lens prescribed by the United States Supreme Court, substantial evidence does not support the EAB's finding that claimant's views on the vaccine more likely than not were solely personal and secular, and not religious. Instead, on this record, a reasonable person would be required to find that claimant's decision to decline the vaccine rested on an honest conviction based on her religion, even if that decision also rested on other concerns.

As an initial matter, neither the hospital nor the Employment Department appeared at the hearing. As a result, neither the hospital nor the Employment Department called any witnesses or presented any evidence undermining claimant's testimony about her religious beliefs. That is, there is no affirmative evidence in the record that would allow an inference that claimant was feigning religious beliefs for the purpose of avoiding the vaccine.

Beyond that, claimant testified about her reasons for not taking the vaccine. She acknowledged secular concerns about the vaccine—for example, that it had been developed quickly. But she also spoke unequivocally to her religious reasons for declining to take the vaccine:

"Yes. So my religious belief, I am a Christian who believes in God and live by the words in the Bible. So I believe the Bible says we are not permitted to treat the

body in a way we believe will harm it. So according to my faith and beliefs, we are created in God's image. I believe my body is a temple and it's my personal responsibility to protect my integrity of my body against toxins and harmful things.

"* * * * *

"And also the use of fetal cells in the development, research and production, it's just some of those things I don't condone and don't feel deep down are right."

Explaining the parts of the Bible that informed her beliefs, claimant identified two passages:

"* * * Romans 14:14, 'If anyone regards something as unclean, then for that person it is unclean.' And also in Psalm 139:13, 'For you created my innermost being; you knit me together in my mother's womb.'"

Claimant recounted that she had received vaccines when she was a child and earlier in life, "but I hadn't received any vaccines recently" because "as I got older, I felt my religious and personal beliefs have grown, and I'm more aware of what I put into my body." Claimant testified further that she had requested, and received, a religious exemption from the flu vaccine for the entire time (10 years) that she'd worked at the hospital.

In addition to her testimony, claimant introduced as evidence documents pertaining to her request for a religious exemption from her employer. In her application for a religious exemption, she expressed the same religious objections to which she testified:

"I am a Christian who believes in God and the Bible and the teachings of the New Testament. I believe and obey His Word and follow the principles laid out in His Word and I have a deeply held belief that this vaccine would violate them. According to my Christian faith, I believe my body is a temple of the Holy Spirit and it is a personal responsibility for me to protect my body's physical integrity against unethical and harmful ingredients and injections. I sincerely believe that all human beings are in the image of God and his concepts affirm[] the unique value of all human life.

"I believe that life is precious and a gift and I personally do not believe in abortion. Stem cells from aborted fetuses are used in testing of the vaccines or are in the vaccines themselves. I cannot in good conscience take these vaccines knowing that the creation or contents go against my personal and religious beliefs."[1]

Regarding her application for an exemption, claimant explained that she had asked for a letter supporting her exemption request from a leader in her faith community, as her employer had requested, but had been directed to write a letter on her own because her church "felt that it might be too political to be involved."

When this uncontradicted evidence is viewed with the Court's warning in mind that it is not, in general, a tribunal's role to evaluate the plausibility of a religious claim, all reasonable factfinders would have to find that claimant's decision not to take the vaccine was rooted in her religious beliefs and was not solely secular or personal.[2]

In finding to the contrary, the EAB made two notable errors.

First, the EAB appears to have overlooked the Supreme Court's injunction that tribunals ordinarily must refrain from assessing the plausibility of a claim of religious

---

[1] The information supplied to claimant by her employer about the vaccine was included in claimant's exhibits. It explained, among other things:

"Pfizer and Moderna used fetal cells when researching the vaccines to see if the vaccines would work. Johnson & Johnson used fetal cells to prepare the vaccine, but it is purified and all fetal cells are removed before you get it.

"Fetal cells that are used are not from recent abortions. They are from fetal cells from the 1970s and 1980s."

[2] Indeed, albeit in a different context, other courts have recognized that statements like claimant's are sufficient under the relevant United States Supreme Court case law to state sincerely held religious beliefs that are in conflict with a requirement to take a COVID-19 vaccine. *See*, *e.g.*, *Ringhofer v. Mayo Clinic, Ambulance*, 102 F4th 894, 900-02 (8th Cir 2024); *Bazinet v. Beth Israel Lahey Health, Inc.*, 113 F4th 9, 15-17 (1st Cir 2024); *Lucky v. Landmark Medical of Michigan, P.C.*, 103 F4th 1241, 1242-44 (6th Cir 2024). In *Ringhofer*, the district court had taken an approach similar to that taken by the EAB here, focusing on the aspects of the plaintiff's beliefs that were secular without taking into account the aspects that were religious. 102 F4th at 900-02. In reversing, the Eighth Circuit explained that, among other errors, the district court had erred by not focusing on the whole of the plaintiff's allegations about her beliefs and "instead focusing on specific parts of the complaints to rule the anti-vaccine beliefs 'personal' or 'medical.'" *Id*. at 901.

belief, and to have read the record with unreasonable parsimony in view of that standard. The EAB chose to focus on the secular reasons for claimant's objection to the exclusion of the other evidence of claimant's religious views, including the uncontroverted evidence that she had, for years, declined flu shots for religious reasons, a fact the EAB did not mention.[3]

Second, the EAB drew unreasonable inferences from the fact that claimant's church declined to provide her a letter in support of her exemption request. The EAB inferred that "the fact that claimant's own religious leader refused to provide a letter weighs to some extent against finding that claimant's opposition to taking the vaccine was rooted in religion." The EAB also inferred that the fact "that the leader told claimant it might be 'too political to get involved' supports an inference that when claimant asked for the letter, the religious leader regarded claimant's objection to receiving a vaccine to be based on her political beliefs, not religion." That fact, the EAB reasoned, "weighs in favor of finding that claimant's refusal to take the COVID-19 vaccine was based on secular considerations rooted in her political beliefs, not in a sincerely held religious belief." But that reasoning presumes that the leader of claimant's church "regarded" claimant's objection to the COVID-19 vaccine as political rather than religious, and it presupposes that one's religious beliefs and political beliefs are necessarily mutually exclusive. Neither of those presumptions is supported by the evidence that claimant's religious leader declined to write a letter supporting her request for a religious exemption.[4] As a result, the EAB erred in relying on them to discount claimant's testimony (and other evidence) that her beliefs were sincere and rooted in religion.[5]

---

[3] The EAB did not discredit claimant's testimony that she regularly was permitted a religious exemption from the flu vaccine.

[4] Although it was claimant's burden to prove that her beliefs were both sincere and religious, that burden, in our view, did not require claimant to present expert testimony from a theologian to preempt potential unfounded presumptions by a factfinder. Rather, when evaluating a person's claim of a sincere religious belief, it is critical that factfinders remain mindful of the limits on their own knowledge so as to avoid making presumptions lacking a basis in fact.

[5] The EAB acknowledged that all members of a faith community need not share a belief for it to be a sincerely held religious belief, properly recognizing that religious views are not always monolithic. But then, inconsistent with that recognition that the First Amendment allows for the possibility of competing

For all these reasons, the EAB's determination that claimant's beliefs about the COVID-19 vaccine were personal and secular and not "rooted in religion" is not supported by substantial evidence. On the contrary, when the record is viewed as a whole under the legal standard articulated by the United States Supreme Court, all reasonable factfinders would have to find that claimant's objection to the vaccine was based in religion. That means that claimant is entitled to benefits, absent a demonstration by the state that the denial of benefits is the least restrictive means to achieving a compelling state interest. The Employment Department did not appear at claimant's hearing or otherwise attempt to make a case that the denial of benefits serves a compelling state interest. Accordingly, there is no basis on which to sustain the denial of benefits that is consistent with the evidence and Free Exercise Clause. We therefore reverse and remand with directions to award claimant unemployment benefits.

Reversed and remanded.

---

viewpoints within the same faith community, it inferred that claimant's beliefs likely were not religious because her church leader did not endorse them.